DECUIR, Judge.
This appeal arises from a worker’s compensation claim filed in August, 1991 by Michael Sprague. Mr. Sprague claims he developed chronic liver disease, skin disorders, neurological impairment, and various other problems caused by exposure to raw sewage and various toxic chemicals while employed by the City of Lafayette as a plant maintenance mechanic. Plaintiff alleges that as a result of his work-related medical problems, he has been totally disabled since May 17, 1991.
After a trial on the merits, the hearing officer issued reasons and rendered judgment in favor of plaintiff awarding compensation benefits from May 17, 1991, as well as medical expenses related to the evaluation and treatment of chronic persistent Hepatitis B and toxic encephalopathy. The hearing officer also found the defendant arbitrary and capricious and awarded attorney’s fees in the amount of $20,000.00 for failing to recognize plaintiffs claim for compensation and for failing to pay benefits or medical expenses associated with plaintiffs Hepatitis B condition.
*605 The City of Lafayette appeals contending that the hearing officer erred in finding plaintiff contracted Hepatitis B in the course and scope of his employment with.the City of Lafayette, in admitting the opinion testimony of Dr. Thomas Callender and Dr.- Wayne Snodgrass as to long-term effects of chronic low dose hydrogen sulfide or H2S gas exposure and in finding plaintiff suffers from H2S gas poisoning, and in finding defendant arbitrary and capricious.
We are impressed with the hearing officer’s very thorough and well-written reasons for judgment. Based upon our review, we find that the record clearly supports the hearing officer’s findings which are subject to the manifest error standard of review. Great deference is to be accorded the hearing officer’s findings and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Virgil v. American Guarantee & Liability Ins. Co., et al, 507 So.2d 825 (La.1987); Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). Applying this standard, we affirm.
Mr. Sprague began his employment with the City of Lafayette in August, 1982. The record reflects plaintiffs employment required him to work in raw sewage at a wastewater treatment plant where plaintiff sustained cuts from needles and other sharp objects flushed into the sewage system shortly after plaintiff first became employed with defendant. It is undisputed that plaintiff currently suffers from chronic persistent Hepatitis B, which plaintiff alleges he contracted as a result of a work-related infection with the Hepatitis B virus in 1982. It is undisputed that plaintiff was exposed to hydrogen sulfide gas, as well as other chemicals during his employment. Plaintiff alleges he currently suffers central and peripheral nervous system disabilities from toxic encephalopathy secondary to chronic exposure to hydrogen sulfide gas and other chemicals during the course and scope of his employment with defendant. The defendant argues in brief that not enough time elapsed from the time plaintiff commenced his employment and the incubation period for Hepatitis B to become chronic. The City of Lafayette further argues that plaintiffs neurological problems are not due to toxicologic poisoning but to medication administered for plaintiffs Hepatitis condition and psychoactive drugs.
Defendant contends plaintiff contracted Hepatitis B prior to his employment with the City of Lafayette. The record reveals defendant denied compensation and medical benefits for plaintiffs Hepatitis B condition based upon erroneous information that plaintiff was diagnosed with Hepatitis B in 1969 when in the Far East and was diagnosed with Hepatitis B in 1980 contracted while working in raw sewage. The record reflects defendant denied benefits despite the fact that plaintiff and his wife informed defendant of this erroneous history. No investigation was made by defendant to confirm whether plaintiff had in fact contracted the hepatitis virus prior to his employment with the City. Furthermore, defendant denied benefits at a time when no physician advised the Hepatitis B condition was not work-related. Defendant denied benefits despite Dr. Lopez’s report of July 11, 1991, that plaintiffs condition was related to and was secondary to the Hepatitis B infection occurring in 1982. Furthermore, the record reflects Mr. Sprague was never tested or treated for, nor diagnosed with Hepatitis B until several months after his employment with the defendant.
Addressing first defendant’s assignment relating to Hepatitis B, we note that the medical testimony supports a finding that Hepatitis B can be transmitted through needles, razors, or other sharp objects making their way into the sewage system. A letter introduced into evidence from David Bertrand, plant maintenance supervisor, corroborated plaintiffs testimony that on occasion he and his employees have sustained cuts from sharp objects in the sewer system.
Dr. Manuel Lopez performed an allergy and immunologic evaluation in May, 1991. Dr. Lopez testified that in his opinion Mr. Sprague contracted Hepatitis B before November, 1982, and also that it is likely plaintiff did not have Hepatitis B prior to his employment in 1982. Dr. Snodgrass is of the opinion plaintiff contracted Hepatitis B as a result of his employment with defendant. Dr. Callender, plaintiffs treating physician, *606 testified that from his review of test results performed by Dr. Lopez, plaintiff contracted Hepatitis B as a result of his employment with defendant in 1982. Based on this evidence in addition to the reasons cited in reasons for judgment, we conclude there is sufficient medical evidence to establish that the December 1982 test results do not indicate Mr. Sprague contracted Hepatitis B pri- or to his employment in August 1982, and that Mr. Sprague contracted the Hepatitis B virus as a result of his employment with the City of Lafayette.
Turning to the issue of H2S exposure, defendant contends the testimony of Dr. Cal-lender and Dr. Snodgrass with respect to H2S gas exposure should be discounted or prohibited on the basis that the underlying data upon which these experts based their opinions are not of the type reasonably relied upon by experts in their particular field and, therefore, their testimony is inadmissible pursuant to La.Code Evid. arts. 702 and 703. Whether the facts or data may be reasonably relied upon is a question for the court under La.Code Evid. art. 104(A). See La.Code Evid. art. 703, comment (d). Both Drs. Snodgrass and Callender possess impressive credentials. Dr. Callender is a board certified internist who has extensive experience in the field of occupational environmental toxicology and has published several papers in the field of toxicology. Dr. Snodgrass, a Professor of Pharmacology and Toxicology, is head of the Clinical Pharmacology-Toxicology Unit at the University of Texas Medical Branch in Galveston, Texas, and is Medical Director of the Texas State Poison Center. Dr. Snodgrass is board certified by the American Board of Medical Toxicology and American Board of Clinical Pharmacology. Drs. Snodgrass and Callender testified extensively as to the data relied upon in rendering their opinions. We note Dr. Eric Comstock, defendant’s expert, does not deny the existence of studies documenting long-term effects on humans who suffer chronic exposure to H2S. Our review of the record reflects the data relied upon by Dr. Snod-grass and Dr. Callender to be of the type reasonably relied upon by experts in the field of toxicology.
Defendant argues that effects of H2S exposure are limited to “acute” episodes and that if death does not result from an acute episode, recovery is the “general rule.” We note a fallacy in defendant’s argument regarding this assignment of error. Defendant argues plaintiff was exposed to “low doses” of hydrogen sulfide. Dr. Comstock based his opinion on the assumption that plaintiff suffered low dose chronic exposure to hydrogen sulfide. The hearing officer apparently found contrary to defendant’s assertion that plaintiffs exposure to H2S was negligible. Such a finding is supported by the testimony of plaintiff, Ronnie Vincent, and Dr. Callen-der. Dr. Comstock conceded in deposition that there is not “unanimity” of opinion as to whether chronic H2S poisoning represents a discrete clinical entity. We note that even the data submitted by defendant’s expert does not negate the fact that plaintiffs neurological impairment may be due to chronic H2S exposure. Both Dr. Callender and Dr. Snodgrass are of the opinion that plaintiff suffers toxic encephalopathy due to chronic exposure to H2S gas during the course and scope of his employment with the City of Lafayette. We find no manifest error in the hearing officer’s findings in this regard.
Finally, we find no error in the award for attorney’s fees. The record clearly supports a finding that defendant was arbitrary and capricious in failing to investigate and recognize plaintiffs claim for compensation and medical benefits. We adopt the hearing officer’s well-written reasons, which are summarized below, relating to the finding that the City of Lafayete was arbitrary and capricious in the handling of Mr. Sprague’s claims. The City knew of Mr. Sprague’s Hepatitis claim by written notice received in August 1990. Initially, plaintiffs claim was denied then later accepted. Plaintiff was never released to return to full duty subsequent to August 1990 and subsequent to the time defendant decided to accept plaintiffs Hepatitis claim. However, the defendant later denied the claim without notifying plaintiff of this denial. Plaintiff believed, due to information provided by defendant, that he was receiving compensation benefits when in reality he was receiving sick leave benefits. In *607 fact, Mr. Sprague never realized his claim had been denied until defendant refused to pay for medical bills for treatment sought in the spring of 1991.
The record reflects that subsequent to the City’s decision to accept plaintiffs claim relating to the Hepatitis condition in October of 1990, it never received any information which justified the City’s determination to deny plaintiffs claim. Plaintiff experienced difficulty in obtaining treatment for the Hepatitis condition due to the City’s refusal to authorize such treatment. The City’s group health insurer authorized an evaluation by Dr. Lopez. In July 1991, Dr. Lopez reported to defendant that Mr. Sprague suffered from Hepatitis B as a result of a work-related exposure in 1982. The City had no information to dispute plaintiffs Hepatitis B condition was work-related. No compensation nor medical benefits were paid and the City undertook no further investigation of Mr. Sprague’s claim.
The City was served with notice of plaintiffs claim for benefits associated with toxic encephalopathy in November 1991. The City undertook no investigation of this claim, nor did it attempt to obtain information from plaintiffs treating physician regarding the toxic encephalopathy claim. The City did have in its possession a report submitted by Dr. Lynn Aurich in which Dr. Aurich expressed an opinion that it was more probable than not that plaintiff was suffering from toxic encephalopathy secondary to exposure to toxic chemicals in the workplace. Nevertheless, the City paid no compensation nor medical benefits associated with this condition.
This case involved extensive legal work. We find that the award of attorney’s fees in the amount of $20,000.00 is certainly justified.
Affirmed. Costs of appeal are assessed against defendant-appellant.